OPINION OF THE COURT
Lee L. Holzman, J.
In this application by Stephen’s sister to be appointed as the *761 fiduciary of his property to succeed the deceased conservator of his property, the questions posed are whether the successor fiduciary should be his conservator or his property management guardian under article 81 of the Mental Hygiene Law and, regardless of the title of the successor, which of the following procedures should be followed: (1) the successor should be appointed in accordance with the conservatorship provisions of article 77 of the Mental Hygiene Law which were in effect in 1986 when the original conservator was appointed by this court; (2) the successor should be appointed in accordance with the requirements for the appointment of a guardian for the first time under article 81 of the Mental Hygiene Law, including the hearing required by section 81.11; or (3) even though the original fiduciary had been a conservator, the “vacancy in office” should be filled in accordance with section 81.38 which provides that it is within the discretion of the court whether a hearing is conducted pursuant to section 81.11. Although the questions posed cannot be answered by any authority which is directly on point, the statutory scheme and public policy considerations lead the court to hold that the newly appointed fiduciary should be a guardian appointed in accordance with the provisions of section 81.38, leaving it to the discretion of the court whether it is necessary to conduct a hearing under section 81.11.
Both the conservatorship proceedings and the committee provisions that were previously set forth in articles 77 and 78 of the Mental Hygiene Law were repealed effective April 1, 1993 and replaced by the addition of a new article 81 of the Mental Hygiene Law (L 1992, ch 698, §§ 1-3). The Legislature repealed articles 77 and 78 and enacted article 81 to provide the “necessary flexibility” to meet the “diverse and complex” needs of persons with incapacities (Mental Hygiene Law § 81.01). However, the Legislature did not intend to vacate orders that had been duly entered under either of the repealed provisions which determined that a person was incapacitated or incompetent and granted authority to the conservator or committee to perform certain acts on behalf of their wards (see Matter of Lois F., 209 AD2d 856, 858). Clearly, if all of the orders that had been duly entered under articles 77 and 78 had been vacated, untold members of our society who were unable to care for themselves would, at least temporarily, have been without the assistance that they needed and the court system would have been inundated with applications pursuant *762 to the provisions of article 81. Thus, where the conservator dies after the date of the repeal of article 77, the stated goal of providing the greatest flexibility and taking care of the specific needs of the incapacitated while protecting their rights can be achieved by appointing a successor for the vacancy in office pursuant to section 81.38. By following this procedure the court can determine whether there has been any change in circumstances with regard to the subject of the proceeding and the court can then, in accordance with section 81.38, decide whether it is necessary to hold a hearing under section 81.11 and, in either event, enter an order specifically enumerating the powers of the newly appointed guardian.
In this application, the decedent’s brother consented to the granting of the application and process was served upon Stephen, the director of the facility where he resides, the executor of the estate of the deceased conservator and the Attorney General of the State of New York. The court appointed the same guardian ad litem who had served in the original conservatorship proceeding. No one opposes the application. The guardian ad litem reports that Stephen’s condition is the same as it was in the original conservatorship application and that his needs are the same. He supports granting the application and notes that the appointment of a guardian for only property management and not for personal needs is appropriate because Stephen continues to be a cooperative patient in a psychiatric hospital. Stephen continues to need someone to take care of all of his property management needs because he is not in touch with reality. He expresses affection for the petitioner, his sister, who assisted the deceased conservator in caring for his needs. The prognosis is that Stephen’s psychiatric problems will continue for the rest of his life and that he will continue to need someone to manage his financial affairs. Based upon these circumstances the court finds that there is no need for a hearing under section 81.11.
The application is granted to the extent set forth below. The petitioner’s appointment shall be of an indefinite duration and her powers as such guardian shall be as follows:
(a) to collect all his assets and income and to invest and reinvest the same as would a person of reasonable prudence;
(b) to pay, settle or otherwise dispose of his lawful expenses and liabilities;
(c) to provide for his proper care and maintenance, and to pay the providers for same including physicians, hospitals, nurses and aides, if any;
*763 (d) to determine his Medicaid eligibility and, if appropriate, to apply for Medicaid benefits;
(e) to pay to New York State Office of Mental Health its claim for services rendered to him;
(f) to exercise such other powers necessary and sufficient to manage his property and financial affairs.
The gross value of Stephen’s assets appears to be slightly in excess of $149,000, consisting of a conservatorship account, assets to be received from an estate and two years of Social Security benefits. The Office of Mental Health appears to be owed slightly less than $20,000. The order to be settled herein shall require that the petitioner post a bond in the sum of $130,000 and may provide that she can be reimbursed for sums that she advanced on Stephen’s behalf provided that she submits an affidavit, bills and proof of payment for such expenditures where appropriate.